UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANDRE NASH,

                    Plaintiff,

v.                                           Case No. 20-cv-903-pp

DYLON RADTKE, SGT. GREY,
SGT. LOOSE, SGT. FEVGOTE,
SGT. SHURLING, SGT. LANNOYE,
CO COUILLARD, SGT. PAUL
and JOHN AND JANE DOES 1–9,

                    Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Andre Nash, an inmate at Green Bay Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants were deliberately indifferent to his serious medical needs when they assigned him to a top bunk and upper-tier cell despite his seizure disorder. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When

1

funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On June 29, 2020, the court ordered the plaintiff to pay an initial partial filing fee of $3.63. Dkt. No. 7. The court received that fee on July 23, 2020. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The plaintiff alleges that he suffers from seizures, and that Green Bay has given him a lower-bunk restriction and lower-tier cell assignment due to their unpredictability. Dkt. No. 1 at 2. The plaintiff asserts that on May 10, 2020, while housed on the top bunk in Cell 7-36 on the South Cell Hall, he suffered a seizure and fell off the top bunk face-first, hitting his face and head on the cell desk and the floor (and causing the desk to break). Id. at 2-3. The plaintiff alleges that when he came to, he "felt sharp pain shooting though-out

3

his face, head, and neck," which led him to believe that he had broken "several bone[s] throughout his face." Id. at 3.

The plaintiff says that once the Health Services Unit saw him, "the defendants placed [him] in the same cell in the same top bunk (bed) without forcing [his] cellmate to relocate his things to the top bunk, nor [did] they move the plaintiff to a different cell." Id. The plaintiff asserts that the defendants failed to protect him and were deliberately indifferent to a serious medical need because they failed to accommodate his medical needs and to protect him from future harm, causing him to fear for his health and safety. Id.

The plaintiff sues Dylon Radtke, Warden at Green Bay, and several sergeants, officers, and unknown defendants in their official and individual capacities. Dkt. No. 1 at 4. He seeks monetary damages and an injunction ordering Warden Radtke to put him on a lower bunk, lower tier and front cell due to his medical restrictions. Id.

C. Analysis

The plaintiff indicates that he is suing the defendants in their official capacities. "Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citations omitted). "Official capacity suits, in contrast, 'generally represent another way of pleading an action against an entity of which the officer is an agent.'" Id. (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). Because it appears that all of the defendants work at Green Bay Correctional Institution, the court

construes the plaintiff's official capacity claims as claims against the Wisconsin Department of Corrections. The Department of Corrections is a state agency, and claims against a state agency are "no different from a suit against the State itself," so the court will construe these claims as claims against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55).

Section 1983, the law that allows a person to sue a state actor for violating his civil rights, allows suits against "persons." A state is not a "person" from whom a plaintiff may recover monetary damages under 42 U.S.C. §1983. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003). The court will not allow the plaintiff to proceed on his damages claims any defendant in his or her official capacity.

The plaintiff also seeks injunctive relief from Warden Radtke in his official capacity. The Supreme Court has held that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under §1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" Will, 491 U.S. at 71 n.10 (quoting Graham, 473 U.S. at 167 n.14, and Ex Parte Young, 209 U.S. 123, 159–60 (1908)). To proceed with his official-capacity claim for injunctive relief against Radtke, the plaintiff must allege that the State itself was responsible for the violation of his constitutional rights because of a practice, custom or policy. Graham, 473 U.S. at 166 (citing Monell, 436 U.S. at 694). The custom or policy must be the

5

"moving force" behind the deprivation. Id. (quoting Polk Cty. v. Dodson, 454 U.S. 312, 326 (1981)).

The plaintiff has not explained what Radtke did to violate his constitutional rights, or nor has he alleged that whatever Radtke did was the result of an official practice, custom or policy. The court will not allow the plaintiff to proceed on his claim seeking injunctive relief against Warden Radtke in his official capacity.

The court reviews the plaintiff's remaining allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim has both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, a plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The subjective component of an Eighth Amendment violation requires a plaintiff to demonstrate that the prison official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837). Neither negligence nor gross negligence is enough to support an Eighth Amendment claim. See Farmer, 511 U.S. at 835–36; Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001).

The plaintiff alleges that "the defendants" put him back in the same cell after his fall, but he doesn't say which of them made the decision to put him back in the same cell. He does not say which of them knew about his seizure restrictions. He does not who decided to put him in the same cell despite those restrictions. To prove that a particular prison official violated his constitutional rights under §1983, "[t]he plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." Colbert v. City of Chi., 851 F.3d 649, 657 (7th Cir. 2017). Simply listing the names of prison officials without explaining what each of them did to violate the plaintiff's rights is not enough for the court to state a claim against them. Id.

The facts the plaintiff alleges, however, indicate that someone may have been deliberately indifferent to his serious medical needs. So the court will give the plaintiff the opportunity to amend his complaint to explain which of the defendants took what actions to violate his rights. When writing his amended complaint, the plaintiff should provide the court with enough facts to answer the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) Where did each person violate his rights?; and 4) When did each person violate his rights? The amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to explain what each defendant allegedly did or did not do to violate his rights.

The court is enclosing a blank copy of its complaint form and instructions. The plaintiff must write the word "Amended" at the top of the first

7

page of the form, in front of the word "Complaint." He must list the case number for this case—20-cv-903—in the space provided for the case number on the first page. He must list all the defendants he wants to sue in the caption of the amended complaint. He should use the spaces on pages two and three to explain the key facts that give rise to the claims he wishes to bring, and to describe which defendants he believes committed the violations that relate to each claim. If there is not enough space on those pages, the plaintiff may use up to three additional sheets of paper, double-spaced so that the court can read them. The amended complaint takes the place of the prior complaint and must be complete in itself; the plaintiff may not refer the court back to his original complaint, rather than repeating in the amended complaint any of the facts from the original complaint that are necessary to his claims.

If the plaintiff files the amended complaint in time for the court to receive it by the deadline the court sets below, the court will review the complaint and decide whether he has stated claims that can proceed against the defendants named in that amended complaint. If the court does not receive an amended complaint by the deadline the court sets, the court will dismiss the case for failure to state a claim and the plaintiff will incur a strike under 28 U.S.C. §1915(g). If the plaintiff decides he does not want to proceed with the lawsuit, he may notify the court (before the deadline) that he wants to voluntarily dismiss the case, and he can avoid incurring a strike.

8

Case 2:20-cv-00903-PP   Filed 11/02/20   Page 8 of 11   Document 9

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **CONCLUDES** that the plaintiff's complaint fails to state a claim. Dkt. No. 1.

The court **ORDERS** that the plaintiff may file an amended complaint that complies with the instructions in this order. If the plaintiff chooses to file an amended complaint, he must do so in time for the court to *receive* it by the end of the day on **December 11, 2020**. If the court does not receive an amended complaint (or a notice of voluntary dismissal) by the end of the day on December 11, 2020, the court will dismiss the case based on the plaintiff's failure to state a claim in his original complaint and will issue him a strike as required by 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$346.37** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing the case without further notice.

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin, this 2nd day of November, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**