ANDRE NASH,

                Plaintiff,

v.

                Case No. 20-cv-903-pp

SGT. GREY, SGT. LOOSE,
SGT. FRUGATE, SGT. SHURLING,
SGT. LANNOYE, CO KAMMER
CO COUILLARD, CO STACY,
CO VANDENAVOND, CO TERRELL,
CO HUTCHINSON and CO CROCHIERE,

                Defendants.

**ORDER SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

On November 2, 2020, the court screened plaintiff Andre Nash's *pro se* complaint filed under 42 U.S.C. §1983, dismissed it because it failed to state a claim and ordered him to file an amended complaint by December 11, 2020. Dkt. No. 9. On November 13, 2020, the court received the amended complaint, which it now screens. Dkt. No. 10.

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

As explained in the previous order, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that

1

seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less

stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

In the original complaint, the plaintiff sued the warden of his prison and several officers in their official capacities. In the amended complaint, the plaintiff names several officers in their individual capacities, many of whom he named in his original complaint. He sues Sergeants Grey, Loose, Frugate, Shurling and Lannoye. Dkt. No. 10 at 5. He also sues Correctional Officers Couillard, Crochiere, Stacy, Hutchinson, Terrell, Kammer and Vandenavond. Id.

The plaintiff is an inmate at Green Bay Correctional Institution, where he was incarcerated at the time of the events described in the complaint. Dkt. No. 10 at 2. The plaintiff alleges that he was released from the restricted housing unit to the South Cell Hall on May 3, 2020. Id. The plaintiff says he was met by Officer Kammer, who told the plaintiff he would be going to cell F-36. Id. The plaintiff informed "staff" that he had a medical restriction mandating that he be housed in a lower-tier cell and on the lower bunk of the bed because he suffers seizures. Id. The plaintiff alleges that Kammer "acknowledged that he knew about the restriction" but still moved the plaintiff to an upper bunk in cell F-36 "for no reason, violating [the plaintiff's] medical restriction." Id. From May 3, 2020 to May 10, 2020—when, the plaintiff says, he had a seizure—the plaintiff talked to Officers Hutchinson, Terrell, Vandenavond, Crochiere and Kammer

3

and Sergeants Loose and Frugate about being moved to a lower bunk. Id. at 2–3. "[T]hey never moved him and said it wasn't up to them." Id. at 3.

On May 10, 2020, while housed on the top bunk in cell F-36, the plaintiff had a seizure and fell off the top bunk face-first, hitting his face and head on the desk (causing it to break) and on the floor. Id. at 3. The plaintiff suffered "significant injuries" to his face, head and neck. Id. After he'd been seen by the Health Services Unit, Sergeant Grey put the plaintiff in the same cell in the same top bunk, "without forcing the plaintiff's cellmate to relocate his things to the top bunk." Id. The plaintiff says he talked to Grey about moving "next door to an empty lower bunk," but Grey refused "because he is not the regular [sergeant]." Id. The plaintiff also talked to Sergeant Shurling about being moved to a lower bunk. Id. Shurling said no because "he do[es] not do personal moves." Id.

The plaintiff then spoke with Sergeant Lannoye about moving to a lower bunk; Lannoye said that "the board and the computer sa[id] that the plaintiff is lower bunk and that's where he should be." Id. at 3-4. The plaintiff told Lannoye that his cellmate refused to move. Id. at 4. Lannoye told the plaintiff he would have Kammer come up to tell the plaintiff's cellmate to move, but the plaintiff says Kammer never came. Id. Officer Couillard was at the plaintiff's cell a few days later, and the plaintiff tried again to get moved to a lower bunk. Id. Couillard allegedly replied, "Why don't you guys fight for the bottom bunk[?]" Id.

4

On May 17—a week after the plaintiff's fall—Officer Stacy came to the plaintiff's cell to get the plaintiff's cellmate to move to the top bunk. Id. The plaintiff says that Stacy and the cellmate argued for ten minutes, and Stacy threatened to take the cellmate to segregation, but the cellmate still refused to take the top bunk, saying he was "too old to be climbing up there." Id. Stacy left and never came back. Id. The next day (May 18, 2020), a doctor from Madison (not a defendant) called to inform prison staff that the plaintiff needed to be moved to a bottom bunk immediately. Id. When the plaintiff got back to the cell hall he told Correctional Officer Pecor (not a defendant) about the events of the past two weeks. Id. Pecor called the plaintiff's cellmate down to the officer's desk, and when the cellmate returned to the cell he and the plaintiff switched bunks. Id. at 4–5.

The plaintiff seeks $100,000 from each defendant for a total damage award of $1,200,000. Id. at 6. He also seeks a preliminary and permanent injunction ordering the defendants to assign the plaintiff to a lower bunk in a lower tier and front cell, "if possible," because of his medical restrictions. Id. at 6.

    C.    <u>Analysis</u>

The court reviews the plaintiff's allegations under the Eighth Amendment, which prohibits cruel and unusual punishments. See generally Wilson v. Seiter, 501 U.S. 294 (1991). This proscription on cruel and unusual punishment encompasses an inmate's right to personal safety. Helling v. McKinney, 509 U.S. 25, 33–34 (1993). An Eighth Amendment claim consists of

5

both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective component requires that the deprivation be "sufficiently serious." Id. To satisfy the objective component of an Eighth Amendment claim, a prisoner must show that he "is incarcerated under conditions posing a substantial risk of serious harm," id., or that he has been deprived of the "minimal civilized measure of life's necessities," Wilson, 501 U.S. at 298 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). For the purposes of screening, the court assumes that having a seizure disorder and being in a top bunk is a condition that poses a substantial risk of serious harm.

The subjective component of an Eighth Amendment violation requires a prisoner to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that when he was released from restricted housing, he informed Officer Kammer that he suffers seizures and had a medical restriction for a bottom bunk. He alleges that he also told Officers Hutchinson, Terrell, Vandenavond, and Crochiere and Sergeants Loose and Frugate that he needed a bottom bunk. (The plaintiff did not allege that he told any defendant except Kammer that he had a medical restriction for a bottom bunk because of his seizures, but at the pleading stage, the court infers that he also told the

6

other officers about his medical restriction.) None of those defendants provided him a bottom bunk. The plaintiff ended up having a seizure, falling from the top bunk and suffering significant injury. Each defendant told the plaintiff that "it wasn't up to them" to decide housing arrangements for prisoners.

It may be that none of the officers had the ability or authority to give the plaintiff the bottom bunk or otherwise change his housing assignment. If not, the officers would not be liable for not overstepping their roles and doing the job of another official at the prison. See Burks v. Raemisch, 555 F.3d 592, 595 (7th Cir. 2009) ("[N]o prisoner is entitled to insist that one employee do another's job."). But it is possible that the officers had an obligation not to sit idly by, knowing the plaintiff faced a serious risk to his health if he fell from the top bunk. They could have contacted the appropriate unit or official about the plaintiff's need for a bottom-bunk assignment or taken some other preventative action. At this stage of the case, the plaintiff has stated enough facts to allow him to proceed on a claim of deliberate indifference against Officers Kammer, Hutchinson, Terrell, Vandenavond and Crochiere and Sergeants Loose and Frugate, all of whom allegedly knew about the plaintiff's medical need for a bottom bunk but failed to take any action to prevent the serious harm he suffered from falling from the top bunk.

The plaintiff also alleges that, after his fall, defendants Grey, Shurling, Lannoye, Couillard and Stacy refused to provide him the bottom bunk or require the plaintiff's cellmate to move to the top bunk. He alleges that Officer Couillard even told the plaintiff and his cellmate to "fight for the bottom

7

bunk."[1] The plaintiff alleges that Lannoye told the plaintiff he would send Kammer to order the plaintiff's cellmate to move, but Kammer never showed up. The plaintiff does not say whether Lannoye directed Kammer to order the cellmate to move, and Kammer did not show up, or whether Lannoye simply failed to speak with Kammer at all. Whichever was the case, the plaintiff does not allege that he fell a second time or suffered any further harm because these officers did not provide him a bottom bunk. Without an allegation of harm, there is no injury for which the plaintiff may recover damages from these defendants. See 42 U.S.C. §1997e(e).

Nonetheless, the Court of Appeals for the Seventh Circuit has made clear that, although §1997e(e) bars an award of compensatory damages without a showing of physical injury, it does not bar other relief, such as injunctive relief. See Thomas v. Illinois, 697 F.3d 612, 614 (7th Cir. 2012). The plaintiff seeks injunctive relief ordering the defendants to provide him a lower bunk on a lower tier in a front cell. Although he suffered no additional physical injury after his initial May 10, 2020 fall, a trier of fact could conclude that being exposed to the *risk of harm* by his continued housing on the top bunk supports a claim of cruel and unusual punishment.[2] Id. at 614–15. The plaintiff may

---

[1] While Couillard's alleged statement was an improper and unprofessional statement, on its own it did not violate the Constitution. See DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000), abrogated in part on different grounds by Savory v. Cannon, 947 F.3d 409, 423–24 (7th Cir. 2020) (*en banc*).

[2] The plaintiff also indicated that he eventually received a bottom-bunk assignment. If that remains the case, some part of his request for injunctive relief may be moot.

8

proceed against Grey, Shurling, Lannoye, Couillard and Stacy for injunctive relief but not for damages.

## II. Conclusion

Under an informal service agreement between the Wisconsin Department of Justice and this court, a copy of the amended complaint and this order have been electronically transmitted to the Wisconsin Department of Justice for service on defendants Grey, Loose, Frugate, Shurling, Lannoye, Couillard, Crochiere, Stacy, Hutchinson, Terrell, Kammer and Vandenavond. The court **ORDERS** the defendants to file a responsive pleading to the amended complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[3] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[3] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

9

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court reminds the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his whereabouts may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin, this 16th day of December, 2020.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**